IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RICKY MOORE, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | Civil Action No. 3:16-CV-01501-N |
| § | | |
| CITY OF DALLAS, TEXAS, *et al.*, § | | |
| § | | |
| Defendants. § | | |

## ORDER

This Order addresses Plaintiff Ricky Moore's motion for preliminary injunction [8]. Because Moore has not demonstrated a likelihood of success on the merits, the Court denies the motion.

### I. MOORE'S EXPRESSIVE ACTIVITIES IN KLYDE WARREN PARK

This case arises from Moore's use of a sketch board to convey religious messages in Klyde Warren Park (the "Park"). The Park is a city-owned, 5.2-acre park that connects uptown and downtown Dallas, Texas. *See* Defs.' Resp. 2 [22]. In May 2007, Defendant City of Dallas (the "City") entered into a Woodall Rodgers Deck Plaza Use Agreement (the "Agreement") with the Woodall Rodgers Park Foundation (the "Foundation"), a private, nonprofit organization. *See* Agreement, Recital A, Defs.' Resp. Ex. E, Defs.' App. 32 [22-1]. In pertinent part, the Agreement authorizes the Foundation to establish "reasonable rules and regulations" for the management and operation of the Park, *id.* § 5.02, Defs.' App. 41, and requires the Foundation to "maintain the . . . grounds and structures in a good, safe, clean and

ORDER – PAGE 1

attractive condition," *id.* § 5.07(t), Defs.' App. 44.  The Agreement also requires the Foundation to "comply with all applicable federal, state and local laws." *Id.* § 5.14, Defs.' App. 47.

This case involves two rules governing visitors' activities at the Park.  The first rule (the "Structure Rule") prohibits the erection of "[s]tructures larger than 4' x 4' without a permit." Park Guidelines, Klyde Warren Park, https://www.klydewarrenpark.org/Visit-the-Park/park-guidelines.html.  The second rule (the "Public Event Rule") provides that the Foundation may require a permit for "any activity that is intended to attract an audience (a 'public event')." Reserve Space, Klyde Warren Park, https://www.klydewarrenpark.org/host-an-event/index.html.  Individuals may host public events in particular areas of the Park (usually the Pearl Lawn) for no rental fee.  *See id.*  If the individual wants to use another area of the Park for his public event, he must obtain a permit.  *See id.*

Between April 2013 and April 2015, Moore would occasionally bring a sketch board and portable easel to the middle of the Park's Ginsberg Family Great Lawn (the "Great Lawn") and set them up near Hart Boulevard.  *See* Moore Aff. ¶ 23, Pl.'s Mot. Ex. A, Pl.'s App. 4–5 [10-1]; Pl.'s Mot. Exs. D, E, Pl.'s App. 24–25 (pictures).  The Great Lawn is a grassy area that serves as a mixed-use activity space in the Park, and Hart Boulevard is a pedestrian walkway that bisects the Great Lawn.  Moore Aff. ¶¶ 20–22, Pl.'s App. 4.  Moore's sketch board measures two feet by four feet in space.  *See* Second Moore Aff. ¶ 29, Pl.'s Reply Ex. NN, Pl.'s App. 87 [29-1].  When placed on the portable easel, the top of the

sketch board reaches six-and-a-half feet in height. *See* Compl. ¶ 17; Pl.'s Reply Ex. OO, Pl.'s App. 98 (picture).

On the sketch board, Moore paints a series of word puzzles. *See* Moore Aff. ¶ 8, Pl.'s App. 2; Pl.'s Mot. Ex. B, Pl.'s App. 22 (picture). When passersby notice the riddles and ask Moore about them, he tells them a story that explains the meaning of the riddles, ultimately leading to a conversation about the Christian faith. *See* Moore Aff. ¶ 8, Pl.'s App. 2. On numerous occasions, the Park's security staff approached Moore and advised him that he was not permitted to set up the sketch board in the middle of the Great Lawn. *See id.* ¶¶ 26, 29–30, 35, 39, Pl.'s App. 5–8. At one point, a member of the Park's management staff advised Moore that he would need to apply for a permit and pay a rental fee of $1,500 to $5,000 to set up his sketch board. *See id.* ¶ 31, Pl.'s App. 6–7.

On April 30, 2015, a Park security guard once again asked Moore to relocate from the Great Lawn to the Pearl Lawn. *See id.* ¶¶ 44–46, Pl.'s App. 9. Moore declined, and the guard left. *See id.* ¶ 48, Pl.'s App. 10. Two members of the Park's management staff then approached Moore and asked him to relocate. *See id.* ¶ 49, Pl.'s App. 10. Although the managers warned Moore that they would call the police if he did not cooperate, Moore refused to move. *See id.* ¶¶ 51–52, Pl.'s App. 10. Finally, Defendant Larry Litton, a Sergeant of the Dallas Police Department, arrived on the scene and issued a criminal trespass notice. *See id.* ¶¶ 53–62, Pl.'s App. 10–12. Moore subsequently left the Park and has not returned with his sketch board since. *See id.* ¶ 63, Pl.'s App. 12.

On June 19, 2015, Moore wrote a letter to various City officials, asking them for relief from the permit restrictions. *See id.* ¶ 65, Pl.'s App. 12; June 19, 2015 Letter, Pl.'s Mot. Ex. K, Pl.'s App. 31–36. In the correspondence that followed, the Foundation defended its rules and regulations for the Park, and it offered Moore a long-term permit to set up his easel and sketch board in the plazas on either end of Hart Boulevard. *See* Defs.' Resp. Ex. C, D, Defs.' App. 10–23 (letters). Moore did not respond to the offer. Moore now moves for a preliminary injunction that would allow him to engage in his desired religious expression in the Great Lawn area of the Park without a permit and without a fee.

## II. THE PRELIMINARY INJUNCTION STANDARD

To secure a preliminary injunction, Moore bears the burden of establishing:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) (internal quotation marks and citation omitted). "[A] preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 253 (5th Cir. 2009) (internal quotation marks and citation omitted).

## III. THE COURT DENIES THE MOTION FOR PRELIMINARY INJUNCTION

Moore asserts claims under 42 U.S.C. § 1983 against the City, Litton, and Defendant David O. Brown, Chief of Police for the Dallas Police Department (the "City Defendants").

Moore argues that the City Defendants have violated his First Amendment and Fourteenth Amendment rights by unduly abridging his freedom of expression and enforcing vague rules and regulations that do not comport with due process. Because Moore has not shown a substantial likelihood of success on the merits of these claims, the Court denies the motion for a preliminary injunction. *See Bluefield Water Ass'n*, 577 F.3d at 253 (placing burden of meeting all four requirements for preliminary injunction on the movant).

### A. Moore's Claim Regarding the Public Event Rule Is Moot

Moore currently lacks standing to challenge the constitutionality of the Public Event Rule. In his Complaint, Moore makes clear that his objective is to engage in "friendly, non-threatening conversation about his religious beliefs," Compl. ¶ 16 [1], and that he "only wishes to converse with one or two individuals at a time," *id.* ¶ 27. The City Defendants concede that this activity does not constitute a public event because it is not intended to attract an audience. *See* Defs.' Resp. 15 (defining audience as "a group of listeners or spectators" (quoting MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2005)). As a result, the City Defendants represent that they will no longer apply the Public Event Rule against Moore. *Id.* at 16.

Article III of the Constitution limits federal courts' jurisdiction to cases or controversies where the parties have a personal stake in the outcome. *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395–96 (1980). The mootness doctrine requires that "'[t]he requisite personal interest that must exist at the commencement of the litigation . . . continue through its existence . . . .'" *Id.* (quoting Monaghan, *Constitutional Adjudication:*

*The Who and When*, 82 YALE L.J. 1363, 1384 (1973). Even under the overbreadth doctrine, a plaintiff must sustain injury in fact as to each challenged provision in order to establish standing. *See, e.g.*, *Brazos Valley Coalition for Life, Inc. v. City of Bryan, Tex.*, 421 F.3d 314, 323 (5th Cir. 2005) (holding appellants lacked standing to raise overbreadth challenge to ordinance that did not apply to their actions). Because the Public Event Rule does not apply to Moore's conduct, he lacks standing to challenge the constitutionality of the rule.

### B. The Structure Rule Does Not Clearly Violate the First Amendment

Moore has not shown that the Structure Rule, as applied to him, violates his First Amendment rights. Moore "wants to engage in his expressive conduct in Klyde Warren Park, on or in close vicinity to Hart Boulevard, a wide pedestrian walkway that flows through the center of the Great Lawn area of the park." Compl. ¶ 27. Citing the Structure Rule, the City Defendants have advised Moore that he cannot set up his sketch board and easel in this area of the Park, but they have offered him a long-term permit, at no cost, to place them in the plazas on either end of Hart Boulevard. *See* Defs.' Resp. 8–9. These plazas are adjacent to both Hart Boulevard and the Great Lawn. *See* Pl.'s Mot. Ex. C, Pl.'s App. 23 (map of Park).

The City Defendants' accommodation meets the intermediate scrutiny test of *United States v. O'Brien*, 391 U.S. 367 (1968). In *O'Brien*, the Supreme Court held that "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *Id.* at 376. Under *O'Brien*, an

incidental limitation on an individual's First Amendment rights[1] will survive intermediate scrutiny if: (1) "it is within the constitutional power of the government;" (2) "it furthers an important or substantial governmental interest;" (3) "the government interest is unrelated to the suppression of free expression;" and (4) "the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Kleinman v. City of San Marcos*, 597 F.3d 323, 328 (5th Cir. 2010) (citing *O'Brien*, 391 U.S. 377). The fourth requirement is "little, if any, different from the standard applied to time, place, or manner restrictions." *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 298 (1984). A regulation will thus meet the fourth requirement if it is "narrowly tailored to serve a significant government interest, and . . . leave[s] open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

The Structure Rule easily meets the first three parts of the *O'Brien* test. Moore does not dispute that the regulation of parks and the procural of maintenance and development contracts fall within the City's constitutional powers. Moreover, the City Defendants have shown that multiple important governmental interests justify the Structure Rule. Visitors to the Park frequently use the Great Lawn to play games, picnic, and enjoy the Park's panoramic view of the Dallas skyline. The Structure Rule enables the Foundation to avoid the safety hazards posed by unapproved large structures and to coordinate multiple uses of

---

[1] The City of Dallas does not dispute that Moore's use of the sketch board and easel qualifies as constitutionally-protected expression.

ORDER – PAGE 7

a limited space. *See id.* at 797 ("The city enjoys a substantial interest in ensuring the ability of its citizens to enjoy whatever benefits the city parks have to offer, from amplified music to silent meditation."). Moore has not shown that the Foundation intends to regulate "speech" through the Structure Rule, or that the City's interest in ensuring visitor safety and enjoyment of the Park is somehow related to the suppression of free expression.

As to *O'Brien*'s fourth requirement, Moore has not established that the Structure Rule is an unreasonable time, place, or manner restriction. Moore argues that the City's safety concerns are overblown because people rarely run across Hart Boulevard's rock pavement when playing games on the Great Lawn. *See* Second Moore Aff. ¶¶ 52–55, Pl.'s Reply Ex. NN, Pl.'s App. 94–95. Moore also contends that the safety risks are low because visitors could easily avoid his sketch board and easel, just as they frequently navigate between other groups of people and their belongings in the grassy area of the Great Lawn. *See id.* But "[t]he validity of time, place, or manner regulations does not turn on a judge's agreement with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests or the degree to which those interests should be promoted." *Ward*, 491 U.S. at 800 (internal quotation marks and punctuation omitted). Neither wisdom nor propriety allow the Court to sit as a legislator and redraft the Park's rules and regulations to reflect lower safety standards. *See, e.g.*, *Cmty. for Creative Non-Violence*, 468 U.S. at 299 (observing that *O'Brien* does not "assign to the judiciary the authority to replace the Park Service as the manager of the Nation's parks or endow the judiciary with the competence to

judge how much protection of park lands is wise and how that level of conservation is to be attained").

Moreover, the record before the Court demonstrates that the Structure Rule, as applied to Moore, affords adequate alternative means of expression. The City has offered Moore a long-term permit, at no cost, to erect his sketch board and easel at either end of Hart Boulevard. Moore maintains that these areas are insufficient venues for his expression because "[b]y forcing me to stand in one end of the area, instead of the middle, I would necessarily miss people in the area where I am not located, cutting down my opportunities to share my message." *See* Second Moore Aff. ¶ 41, Pl.'s Reply Ex. NN, Pl.'s App. 91. Moore also says that he cannot stand in these small, noisy plazas without obstructing pedestrian traffic or speaking loudly, and that the resulting inconvenience to passerby would sully his message. *See id.* ¶ 42, Pl.'s App. 91. These criticisms may show that the plazas and Hart Boulevard are not perfect equals, but they do not demonstrate that the plazas are constitutionally inadequate alternatives. *See Int'l Women's Day March Planning Comm'n v. City of San Antonio*, 619 F.3d 346, 372 (5th Cir. 2010) ("[A]n alternative venue for speech may still be constitutionally adequate, even when there is 'a reduction in the potential audience' for speech in the alternative venue.").

Finally, Moore has not established that the Foundation enforced the Structure Rule in a discriminatory manner or otherwise singled him out for selective prosecution. Moore contends that the Foundation routinely allows visitors to bring tables, picnic blankets, coolers, goal posts, playpens, umbrellas, large strollers, easels for painting, tripods for

photography, and telescopes to the Great Lawn. *See* Second Moore Aff. ¶ 30–31, 33, 56, Pl.'s Reply Ex. NN, Pl.'s App. 87–89, 95. Moore, however, has not conclusively established that any of these items are "structures," that they measure larger than four by four feet, or that their users lacked permits. And even if the Court assumes that the Structure Rule prohibits some of these items, "[s]electivity in enforcement or prosecution may sometimes be the result merely of a lack of adequate resources to deal with all lawbreakers or a concentrated effort to allocate scarce resources to the most egregious violations." *Dorward v. Ramirez*, 2009 WL 2777880, at *9 (N.D. Tex. 2009). Certainly, in Moore's case, Park security staff asked him to apply for a permit or otherwise relocate to the Pearl Lawn several times before reporting his conduct to the police.

The Court concludes that Moore has not clearly established that he is substantially likely to succeed on the merits of his First Amendment challenge to the Structure Rule.

### C. The Structure Rule Does Not Clearly Violate the Fourteenth Amendment

In his Reply, Moore argues that the Structure Rule violates the due process clause of the Fourteenth Amendment.[2] A "basic principle" of due process provides that "an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). "Flexibility in a statute is permissible" under this principle, but at a minimum, "the statute must provide 'fair notice' so that its prohibitions

---

[2]Ordinarily, the Court would not consider an argument or claim raised for the first time in a movant's reply brief. However, the City Defendants have not objected to Moore's assertion of a vagueness challenge to the Structure Rule, and the Court ultimately denies the motion for a preliminary injunction. Because consideration of this argument will not prejudice the City Defendants, the Court addresses it here.

may be avoided by those who wish to do so." *Serv. Emps. Int'l Union, Local 5 v. City of Houston*, 595 F.3d 588, 596–97 (5th Cir. 2010) (citing *Grayned*, 408 U.S. at 110–12) ("*SEIU*").

Moore has not demonstrated that the Structure Rule is unconstitutionally vague. The Court has already held that Moore failed to establish discriminatory enforcement of the rule. *See supra*, Part III.B. Moore claims that he "could not guess" that his structure is larger than four by four feet, Pl.'s Reply 5, but his own Complaint alleges that the sketch board, fully erected, "is approximately 4 feet in width, 2 feet in length, and 6.5 feet in height," Compl. ¶ 17. Moore contends that the term "structure" is vague because the City Defendants did not define it in the rule. Moore also cites another Park rule that prohibits "[e]recting tents or other structures," Pl.'s Mot. Ex. O, Pl.'s App. 47 (picture), thereby suggesting that "other structures" resemble tents. These concerns, however, do not show that the Structure Rule has the capacity "to chill constitutionally protected conduct, especially conduct protected by the First Amendment." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 546 (5th Cir. 2008). Moore has not clearly established a substantial likelihood that he will succeed on the merits of his due process claim.

CONCLUSION

Moore has not clearly carried his burden of demonstrating a substantial likelihood of success on the merits.[3] Accordingly, the Court denies his motion for a preliminary injunction.

Signed August 25, 2016.

_____
David C. Godbey
United States District Judge

---

[3]In reaching this conclusion, the Court makes no comment on the City Defendants' alternative arguments under Local Civil Rule 7.1 and *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978).